business with the Honorable United States Court of Appeals for the Ninth Circuit. Now draw near, give your attention, you will be heard. God save the United States and this honorable court. Please be seated. Good morning and welcome to the Ninth Circuit. We have one case on calendar that is to be referred to as 22-15270, Yesenia Kelly v. Kilo Kejikazi. In accordance with the order previously entered on the docket of that case, that case is hereby submitted on the briefs. We'll then proceed to hear argument in the first case on the argument calendar for the day, which is 22-15378, Martin Walsh v. Brian Bowers. And we'll hear first from Mr. Johansson. Did I pronounce that correctly? Thank you, Your Honor. Thank you for the opportunity to be heard today, Your Honors. Should we change the name of Martin Walsh? I think he's retired. Yes. What is it? Who's the news? Happy to change the name. Oh, so blank. Yeah. All right. Blank v. Bowers. Go ahead. It's actually a gentleman from Boston. Your Honors, I'd like to spend about four to six minutes making an argument to you and then reserve the rest of the time for rebuttal. Where an attorney knowingly or recklessly raises a frivolous argument, that's bad faith. There's two forms of bad faith I'd like to point your attentions to in addition to the briefs we filed. The government ignored the ERISA statute that was signed into law dating back to 1974, and congressional mandates since then, including as recently as last summer when a bipartisan committee ordered the government to rule or pass the legislation to order the government to pass a rule on adequate consideration and fair market value, and they haven't done so. Most recently in December, Congress did this again. They gave another direction. That, to me, is bad faith in addition to the fact that the government's standard in ERISA cases like this, Your Honors, is not accurate. It's inaccurate. The standard they use is a fair market value test and a prudence test. It's really the test of a independent fiduciary who makes a independent good faith determination based upon an independent appraisal. So it's not two separate tests. It's one test, Your Honors. And for those reasons, I believe that the government has come down wrong on my clients. And by the way, my name's Dave Johanson, and I represent Bowers Plus Kubota Consulting Inc., which is owned 100% by an ESOP. Your Honors, I believe the government's come down on a small opponent in a careless and oppressive manner here. Secondly, my second bad faith argument I'd like to briefly talk to you about is the evidence at trial. The government tendered expert testimony that was so inaccurate. They also didn't provide any evidence whatsoever focusing primarily on the two errors identified by the district court, the $1 million error of costs that were passed through, and then the nearly $3 million error that relates to looking at events past the date. Yes, Your Honor. Those are two of them. On top of that, Your Honor, the government, those are the two primary ones. You're correct. On top of that, the government also used an investment standard of value instead of a fair market value standard, so buy low, sell high. On top of that, those were the major issues with Mr. Sherman's violations of USPAP in his valuation. And Mr. Sherman, Your Honor, I want to note, has been at this since 2018. So there was no excuse for him to get it wrong, Your Honors. Your Honor, also, I would note out the Secretary of Labor's internal valuation and financial experts actually almost had seven years to get the valuation issues right, including investigation subpoenas, one-sided administrative depositions where the other side didn't get to respond or ask questions, a one-week trial, discovery for years, and motions for summary judgment, and they still didn't get the valuation issues right. To me, Your Honor, that constitutes bad faith. Your Honors, on top of that, the courts have looked at unreasonable agency action. Do you have to establish bad faith in order to be eligible for attorney's fees? I mean, that's one of your arguments, but the other argument would be that the district court abused its discretion in concluding that the Secretary's position was substantially justified. Correct, and I was about to go into that for a couple of, just a minute, Your Honor. Unreasonable agency action, Your Honor, equates to lack of substantial justification. The ESOP Association's amicus curiae brief, appellant's opening brief, appellant's reply, all of them provide a number of examples why the government acted unreasonably here, as it relates to the issues, because they developed a case that didn't have any teeth whatsoever. It wasn't a matter of just missing on a couple of points. They missed on all points, Your Honor, in our opinions. But I understand your point about the expert and the valuation. On the other hand, I mean, there were a lot of red flags. It was things that at least seemed suspicious. You know, the trustee billing a total of 30 hours for a $40 million matter. I mean, your lawyer, I'm sure, you know, on a simple motion to compel, you know, law firms bill, you know, easily 100 hours on that. And on a $40 million transaction, a trustee billing only 30 hours using a valuation expert that had previously been hired by the firm. I mean, there were some red flags there for the government here. It wasn't like there was nothing. Your Honor, those red flags, especially the ones that you're just talking about, we debunked in our briefs, basically. Those red flags weren't real red flags that you just discussed, Your Honor. And I put them forward in our reply brief. I put them forward in the original brief. The timing issue, I'll just respond to briefly, Your Honor. Our expert witness who had 45 years experience, Greg Brown, testified about this too. And the court ruled that the expert on the other side, Johnson, failed to say how many hours was necessary. Furthermore, there was no real evidence as to whether or not Mr. Zackwidney only contributed 30 hours, because he didn't even testify. And, Your Honor, the expert for the government didn't say what was supposed to be done in this case. Our witness did say, credibly, what needed to be done, and that Mr. Zackwidney did the correct thing. Like I said, that, you know, points out why you want a trial. But, you know, again, what we're looking at here is, you know, whether the government was substantially justified. Excuse me, Your Honor? Yeah, I mean, that proves why you want a trial, that the government didn't meet its burden. But, again, when we're looking at here for attorney's fees, it's whether the government was substantially justified in pursuing this matter. I think it proves why, maybe, potentially, you bring the case, but you actually start to investigate the case in an administrative deposition. I don't think it supports bringing the case to trial. And that's what our briefs, I think, indicate, Your Honor. And I think they had seven years to do this, and they didn't do a very adequate job of it. Your Honors, this is one of the best. If you can't get attorney's fees, in this case, for a small company like this that's fighting the government, I don't know what kind of a case we need to prove in order to get there, Your Honors. And I do respectfully say that appellants posit that the Honorable Judge Mulway's order is clearly erroneous as it relates to her rulings, that the government was substantially justified, and that the government didn't act in bad faith. Thank you, Your Honors. I'll reserve the rest of my time. All right. We'll hear now Ms. Hahn. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Christine Hahn, representing the Secretary of Labor. I'll be arguing that the District Court did not abuse its discretion in denying appellants' requests for attorney's fees and non-taxable costs or to reduce appellants' requests for taxable costs. Each of these are not awarded to the prevailing party if the government was substantially justified. Here's a question I have for you. Suppose the District Judge reviewing the trial on the merits had relied on Sherman's analysis and rendered a verdict for the Secretary based on that. What would we have had to do with that on appeal? On the merits, Your Honor? Yes. If the District Court judge had relied on the expert's opinion in deciding the merits of the case, I don't see how that would affect substantial justification. It does, because if she had adopted Sherman's analysis, we'd have to reverse it. I mean, it's clearly erroneous. You know, the $10 million was passed through, and he relied on it and added it back in. That's a 25 percent error in his evaluation. On top of that, he then goes past the date when lots of things have changed. He picks one thing past the date and adds another million based on that. Correcting those two errors alone gets you over $40 million. So, if she had come out the other way on the merits at the trial, we would have had to reverse that for lack of substantial evidence. Now, Underwood tells us that lack of substantial evidence means not substantially justified. So, looking at this record, where you lack substantial evidence for your case at trial, we would have had to reverse it if it had come out the other way. This was a total failure of proof. Your position seems not to have been substantially justified under Underwood's standards. Your Honor, the government's expert, Sherman's report, was but one piece of evidence at trial. There's also other issues of a lack of independence and imprudence. If you look at the... But the key fact of the valuation at $40 million, everything falls apart. If you pull that thread, the whole case unwinds. We understand that that's how she analyzed it. Once she found the $40 million, she then plugged that in and it defeated every ERISA claim. We understand that the government's expert's evidence was not persuasive, but that doesn't mean... No, no, no. It was more than not persuasive. It was defective in a way that would have required reversal if she had adopted it. Yes, Your Honor. However, we're looking at substantial justification, which is a different standard and a preponderance of evidence for ERISA purposes. But that's my point. Again, persuasive and preponderance, that's one standard. But this would have had to have been reversed as lacking substantial evidence and as clearly erroneous. And Underwood tells us that is the standard for substantial justification. So I'm having a hard time seeing how she didn't abuse her discretion in not finding that there was a valuation expert's report that the district court analyzed. It's different from the standard of what the government had in its entirety of evidence. The Supreme Court said that EJIA favors looking at the case as a whole. It's not atomized line items by saying what errors did one valuation report had. Here, if you look at the valuation advisor that the trustee hired, this same valuation firm had just completed an analysis just weeks prior for the other side. And the trustee here only spent 30 hours on due diligence to approve a $40 million deal. And these are the types of evidence that courts have found show a lack of independence and a lack of prudence. You come back to the fact that your own expert's evaluation, once you fixed his obvious and pretty much indisputable errors, also got you $40 million. So your case falls apart at that point. Your Honor, I would also point your attention to the fact that the Secretary overcame a motion for merits. So it's not that there was no evidence whatsoever. There were two— I've seen a lot of cases where judges are very lenient on summary judgment and let things go to trial that they shouldn't. They don't catch the errors at summary judgment. But, you know, this one went to trial and there was no there there. I would return to the fact that the valuation—the issue of fair market value here is but one issue. There were issues of a lack of duty of loyalty and a breach of the fiduciary duty of prudence here as well. So whether there was a prohibited transaction and an adequate consideration for the company is one issue at trial. There's also an issue of whether there was knowingly participating in this breach as well as other breaches that we allege, which is why we should look at this case as an entirety for easier purposes. Let me ask you another question because the judge's analysis on page 30 and 31, it comes down to one key sentence. She says, it's discussed in detail in the court's post-trial findings of fact and conclusions of law, which the court does not rehash here. The government had every right to be suspicious of the circumstances surrounding the sale of the company to the ESOP. That's it. That's the initiate an investigation, and that's not the standard under Underwood. Underwood says, look at it as a whole having sat through the trial. So it seems it has to go back at a minimum because she legally applied the wrong standard. But if you also look at the district court's analysis in the trustees' action, it said that even if the government did not meet its burden at trial, it was not acting on a whim. If you look at the red flags that the appellants point to, this case as a whole was enough for the secretary to defeat a motion for summary judgment. And if you look at the valuation expert itself, the judge said that there was one part that was not persuasive, but it was not that the expert in its entirety was not credible. And if you look at the subconsultant fees, which the district court felt was not persuasive, there was no requirement that the government's expert interview the defendant's company's management. So we taking the case as an entirety, the government was substantially justified at each level of litigation here, which is again why we defeated a motion for summary judgment. I have a chronological question to ask. When did the government know the opinion of its expert witness? When in relation to the litigation? The government understood that when the government brought this to trial, there were other evidences that the company had overpaid, that the ESOP had overpaid, including the letter of interest that said that this was well under $40 million. Pardon me, may I rephrase my question more precisely? When was your expert's opinion known to the government? The expert's opinion was known to the government before trial, yes. Before trial? How much before trial? The exact date is... Was it known to the government in its investigation and before an action was filed? I would say that the government did have that information, yes. It had the information before it filed the action, correct? That is correct, Your Honor. All right. So then all the government had really was the suspicious circumstances, which as Judge Collins has pointed out, is sufficient to start an investigation. But the suspicious circumstances, weren't they overcome by the fact that the government knew the basis and the opinion of its expert before action was filed? No, Your Honor. There were other evidences that, and this is why it went to trial and defeated motion for summary judgment, whether the opinion relied... What was the triable issue of fact at the summary judgment stage, which the judge found to be material? There were several issues, Your Honor. The issue of knowing participation, whether the trustee here lacked independence because they had hired someone that had just completed evaluation just weeks prior. That was a suspicion, but what other information was there? It was a reasonable suspicion, Your Honor, but there was also issues of fact that came out during the trial about the consideration that was given. It wasn't that the government knowingly relied on something that was erroneous. There was a disagreement, and the district court points to the fact that there's no standard for the government to have interviewed people of management at the defendant's company. So there was a disagreement, we understand, at trial about the valuation of the company, but that does not mean that the government knowingly proceeded relying on a fact that it knew to be erroneous. Is it your position that one of the ERISA claims could have survived even apart from a finding by the district court that the valuation of the company was more than $40 million? Could you repeat that, Your Honor? Is it your view that at least one of the ERISA claims could have survived even given the district court's finding that the valuation of the company was more than $40 million, and if so, which claim and why? Your Honor, even if the value of the company was in excess of $40 million, there could have been issues of a breach in the duty of loyalty and prudence, yes. And how would that have resulted in liability and an award? What would that have looked like? Other relief that the Secretary would be able to seek would be injunctive relief, apart from equitable relief, if the trustee was found to have lacked prudence and independence in pursuing this deal. Okay, thank you. We'd also like to make the point that Appellant failed to show how the government acted in bad faith sanctions are reserved. The appellants failed to show any evidence that the Secretary disregarded judicial process or engaged in frivolous litigation. And lastly, I would like to point the court's attention to the taxable cost issues at hand. We understand that there was a factual error that the district court made about the timing of depositions. However, the district court's reasoning was that the nine depositions that the appellants took was unreasonable and unnecessary in raising costs of this litigation. All right. Thank you, counsel. All right. We'll hear rebuttal now from Mr. Johanson. What's your response to the assertion that at least the duty of loyalty claim did not rest in a load-bearing way on the $40 million determination could still be substantially justified apart from that? I don't think they presented any evidence that proved anything of that nature during the entire trial. There was no precipient witnesses presented by the government that supported that, Your Honor. Your view is that the duty of loyalty stood or fell with the $40 million valuation or just— Sorry, Your Honor. My interpretation of the law is it's a standard of a determination in good faith by the independent appraiser whether or not the ESOP paid more than fair market value. And so it's a prudence and about fair market value standard wrapped into one. And I think they didn't prove anything. There was no evidence presented at trial of any substantial justification for any ERISA fiduciary violations or knowing participants. There was testimony—I point the panel out to the judge's inquiry of the government about the punch where that proved there was no knowing participation. Just a few quick points, Your Honor. On the issue of taxable costs, the government—or excuse me, the court clearly erred there because the depositions and questions all occurred before the motion for summary judgment order. So those costs should have been reimbursed. And we ask you to change the lower court's order in that respect. There were other valuations, Your Honor, dating back to May 9, 2016. As Judge Bea pointed out, they knew about this long before 2018. They knew what they thought the valuation is, and it changed all the time. The government talked about evidence. They didn't present any witnesses. They presented our witnesses. The government talked about not being allowed to interview. We didn't prevent them from interviewing anybody. They'd called me. I would have been glad to make our witnesses available to them for an interview. No problem. They didn't ask. And I agree with the court's position on probable cause to potentially initiate an investigation, but not take it three years and then sue, and then sue for another three years and then have us go to the Ninth Circuit to try to get fees back. There was no—as to summary judgment, Your Honors, there was no expert testimony presented at summary judgment. So that didn't prove anything, as Your Honor, Judge Collins, you pointed out. Um, and this is a situation in which the entire case as a whole was not substantially justified. There was no evidence that presented anything that was substantially justified. Counsel, you say there was no evidence submitted on summary judgment by the government, correct? Sorry, Your Honor, I didn't mean to say that. I meant to say none of the evidence was presented was, uh, that it was all controverted by our clients, and they didn't present recipient witnesses. We presented— You misspoke, and that's fine. Yeah, I misspoke. Thank you, Your Honor, for correcting me. So, Your Honors, I respectfully say that, uh, this was one that maybe should have started an investigation, but shouldn't have gone for three years in an investigation and three years later and now having us be before you to ask for fees. Thank you for correcting the lower court in this respect. All right. Thank you, Counsel. The case just argued will be submitted. Thank you, Your Honor.
judges: BEA, COLLINS, LEE